**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Judith V Brown,<br><br>        Plaintiff,<br><br>v.<br><br>NEWREZ LLC, et al.,<br><br>        Defendants. | No. CV-19-02889-PHX-DWL<br><br>**ORDER** |

      In May 2012, Plaintiff Judith Brown stopped making payments on the nearly $1 million mortgage on her home in Paradise Valley, Arizona. Since then, Brown has filed a series of lawsuits and bankruptcy proceedings in an attempt to stave off foreclosure. This is the latest such lawsuit. Now pending before the Court are motions to dismiss filed by Defendants Bank of America (Doc. 9) and Newrez LLC (doing business as Shellpoint) (Doc. 13), as well as Brown's motion to amend her complaint (Doc. 25). As explained below, the Court will grant the motions to dismiss, deny the motion to amend, and terminate this action.[1]

**BACKGROUND**

      The facts as alleged in the complaint, and as established though the exhibits attached to the complaint, Shellpoint's unopposed request for judicial notice (Doc. 14), and

---

[1] Brown and Shellpoint have requested oral argument. Those requests are denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv. 7.2(f) (same).

Shellpoint's unopposed supplemental request for judicial notice (Doc. 27),[2] are as follows.

I.  Brown's Lawsuits And Bankruptcy Proceedings

In May 2004, Brown borrowed $999,999 to refinance her home in Paradise Valley, Arizona. (Doc. 1-1 at 4-14; Doc. 14-1 at 3-4 ¶ 8, 38-41.)

In May 2012, Brown filed a petition for Chapter 11 bankruptcy. (Doc. 14-1 at 9 ¶ 33; Doc. 14-2 at 19-20.) Around this time, Brown stopped making her monthly mortgage payments. (Doc. 14-2 at 59; Doc. 14-3 at 11.)

In April or May 2016 (after Brown's Chapter 11 plan had been confirmed), Brown received a letter from Shellpoint stating that she was in default and that foreclosure proceedings would be initiated in 30 days. (Doc. 14-1 at 10 ¶¶ 39, 42.)

In June 2016, Brown filed a lawsuit in Maricopa County Superior Court asking that the court "quiet title on the home and order that any and all lien(s) held by the defendant(s) be released." (Doc. 27-1 at 1.)

In November 2016, after the case was removed to federal court, Brown stipulated to the dismissal of the case without prejudice. (Doc. 27-1 at 16.)

In March 2017, Brown received a notice of trustee's sale of her home. (Doc. 1-1 at 2-3; Doc. 14-1 12 ¶ 50.) The sale was originally scheduled for June 29, 2017 but was then rescheduled.

On August 17, 2018, Brown filed a lawsuit against Shellpoint and certain other defendants in Maricopa County Superior Court and also sought a temporary restraining order ("TRO") to prevent those defendants from pursuing a trustee's sale. (Doc. 14-3 at 20.)

---

[2]  When ruling on a 12(b)(6) motion, courts may consider "matters properly subject to judicial notice." *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1117 (9th Cir. 2018) (citation omitted). *See also United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("[W]e 'may take notice of proceedings in other courts . . . if those proceedings have a direct relation to matters at issue.'") (citation omitted); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("[Courts] may take judicial notice of court filings and other matters of public record."). The only limitation, at least at the motion-to-dismiss stage, is that the Court may not take judicial notice of any disputed facts contained within such records. *See, e.g., Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-90 (9th Cir. 2001).

In October 2018, following an evidentiary hearing, the trial court denied the TRO request. (*Id.*) Specifically, the court found that "[a]ll of Plaintiff's claims for relief appear to be based upon the argument that somehow, despite not making any payments on her mortgage since 2012, and eight years into a 30-year mortgage, she is now absolved from making any future payments and may continue to retain possession of her residence." (Doc. 8 at 3, citation omitted.)

In November 2018, Brown filed a first amended complaint in the state-court action, arguing that a complex chain of transfers resulted in none of the defendants in that case (including Shellpoint) having the power to foreclose on her home. (Doc. 14-1 at 20 ¶¶ 109-110; Doc. 14-1 at 32.)

On January 2, 2019, Brown filed another TRO request in the state-court action. (Doc. 14-3 at 20-21.)

On January 7, 2019, the trial court denied the second TRO request. (*Id.*)

On April 2, 2019, the trial court issued an order dismissing Brown's first amended complaint "with prejudice." (Doc. 14-3 at 10-18.)

On May 7, 2019, Brown filed this lawsuit (which is summarized in more detail in Part II below) and also sought a TRO from this Court. (Doc. 1.)

On May 8, 2019, this Court denied Brown's TRO request. (Doc. 8.)

On May 9, 2019, Brown filed a petition for Chapter 13 bankruptcy. (Doc. 27-1 at 17-24.)

II. <u>The Current Lawsuit</u>

The complaint, which Brown filed *pro se*, alleges that, throughout the course of the state-court litigation, Brown exchanged text messages with a person who identified himself as "Winston Wallace." (Doc. 1 at 3 ¶ 4; Doc. 1-1 at 25-43 [text message chain].) The complaint alleges that an unspecified person gave Wallace's name to Brown as "a recommendation for a point of contact to [Shellpoint] for help in obtaining a loan modification of some sort, or in the alternative, negotiate an extension of payments while she was attempting to . . . bring the loan current on her house." (Doc 1 at 3 ¶ 4.) The

complaint further alleges that Brown, while operating under the assumption that Wallace was a representative or agent of Shellpoint, made multiple payments to Wallace over the span of 18 months, ultimately amounting to $20,000. (Doc. 1 at 3 ¶¶ 4-7.) Finally, the complaint alleges that the money Brown sent to Wallace was never applied toward Brown's loan balance; instead, "Defendants . . . apparently decided to take the proceeds for themselves into their personal bank accounts." (*Id.* at 1.)

Based on these allegations, the complaint asserts two causes of action: (1) a claim for "negligent misrepresentation," premised on the theory that "Defendant . . . failed to disclose the material fact that those payments [to Wallace] were actually not going to the lender in any capacity" and that "lenders [sic] agents intercepted these payments . . . for their own personal use" (*id.* at 4); and (2) a claim for "consumer fraud," premised on the theory that "Defendants made misrepresentations that they were collecting on behalf of the lender and concealed the material fact that they intended to keep her money" (*id.* at 5).

On May 29, 2019, Bank of America filed a Rule 12(b)(6) motion, arguing that none of Brown's allegations have anything to do with Bank of America. (Doc. 9.)

On June 6, 2019, Shellpoint filed a motion to dismiss, arguing that Brown's claims are barred by claim preclusion, fail to state a claim under Rule 12(b)(6), and are insufficiently pleaded under Rule 9(b). (Doc. 13.) After both motions had been filed, and now with the assistance of counsel, Brown filed responses to both motions as well as a motion to amend her complaint. (Docs. 20, 21, 22, 25.) Both Bank of America and Shellpoint oppose the motion to amend. (Docs. 28, 29.)

**ANALYSIS**

I.  Shellpoint's Motion to Dismiss

Shellpoint raises three arguments in its motion to dismiss. First, Shellpoint argues that Brown's claims in this case are barred by claim preclusion because they could have been brought in her state-court action. (Doc. 13 at 5.) Second, Shellpoint argues the complaint relies on conclusory allegations, fails to allege sufficient facts to support either cause of action, and is insufficient under *Iqbal* and *Twombly*. (*Id.* at 4-5, 8-9.) And third,

Shellpoint argues that the complaint contains fraud-based claims that are insufficiently pleaded under Rule 9(b). (Doc. 13 at 7-8.) As explained below, the Court disagrees with the first argument but agrees with the second, and thus does not reach the third.

### A. **Claim Preclusion**

"Claim preclusion, often referred to as res judicata, bars any subsequent suit on claims that were raised or could have been raised in a prior action." *Cell Therapeutics, Inc. v. Lash Grp., Inc.*, 586 F.3d 1204, 1212 (9th Cir. 2009). "Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Olivas-Motta v. Whitaker*, 910 F.3d 1271, 1279 (9th Cir. 2018) (citation omitted). Similarly, claim preclusion "bars all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties on the same cause of action." *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992). "Claim preclusion 'applies when there is (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between the parties.'" *Cell Therapeutics*, 586 F.3d at 1212 (citation omitted).

The second and third elements are clearly met here. Shellpoint was a defendant in Brown's state-court litigation and that action was dismissed with prejudice, which is equivalent to a final judgment on the merits. *Airfreight Exp. Ltd. v. Evergreen*, 158 P.3d 232, 237 (Ariz. Ct. App. 2007). *See also* Ariz. R. Civ. P. 41(b). All that remains is whether there is an identity of claims.

Although Shellpoint focuses on the "same transactional nucleus of fact" test for identity of claims, this Court must apply "the res judicata rule of the jurisdiction that heard the initial case." *Howard v. City of Coos Bay*, 871 F.3d 1032, 1039-40 & n.2 (9th Cir. 2017). That means Arizona law applies, and in Arizona the test for identity of claims remains the "same evidence" test articulated in the Restatement (First) of Judgments § 61. *Lawrence T. v. Ariz. Dept. of Child Safety*, 438 P.3d 259, 265 (Ariz. Ct. App. 2019). *See also Five Points Hotel Partnership v. Pinsonneault,* 835 F. Supp. 2d 753, 760 (D. Ariz. 2011) ("To determine the preclusive effect of a state court judgment, the Court looks to

state law. . . . Arizona uses the 'same evidence' test for determining whether an action is the same cause of action for res judicata purposes.") (citations omitted). Arizona's "rather restrictive" test for same evidence is "[i]f no additional evidence is needed to prevail in the second action than that needed in the first, then the second action is barred." *Phoenix Newspapers, Inc. v. Ariz. Dept. of Corrections*, 934 P.2d 801, 804 (Ariz. Ct. App. 1997). This "narrow" approach to claim preclusion allows a second claim to proceed if there is a "new theory in [the] second action, supported by some additional facts." *Id.* at 805.

Here, Brown has presented both a new theory and some new facts. Brown's state-court litigation focused on a sequence of sales of her loan to various entities and her ultimate theory in that case was that, as a result of those sales, no one with the authority to order a trustee's sale could be identified. In this litigation, she instead focuses on a series of payments, totaling $20,000, she made to Wallace that have seemingly vanished. These payments ended several months after the state-court litigation began. All of this suggests Brown may not have become aware of the harm arising from the Wallace payments until January 2019 at the earliest, and by her account, she was not aware of the issue until late April or early May 2019. (Doc. 25-1 at 9 ¶ 32.) Not only are these facts distinct, the key events occurred after the filing of the state-court complaint. *Cf. Owens v. City of Phoenix*, 884 P.2d 1100, 1108 (Ariz. Ct. App. 1994) (declining to apply claim preclusion because claims in the second litigation "were not ripe" at the time of the initial litigation). Finally, Brown also seeks different relief in this case than she did in state court. Here, she complains of negligent misrepresentation and consumer fraud and seeks money damages. In the state-court proceedings, she sought a declaratory judgment that various entities could not order a trustee's sale of her home. (Doc. 14-1 at 31-32.)

In a nutshell, here Brown advances different claims, citing different facts, to reach a different result. This constitutes a "new theory. . . supported by some additional facts." *Phoenix Newspapers*, 934 P.2d at 805. Although Brown's failure to disclose the state-court litigation is troubling, this lawsuit is not barred by claim preclusion.

…

B. **Failure To State A Claim**

"[T]o survive a motion to dismiss, a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Iqbal*, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id*. at 1144-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679-80. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

Shellpoint contends Brown's complaint should be dismissed under Rule 12(b)(6) because it "does not allege facts sufficient to constitute a cause of action," "attempts to assert claims for relief with mere conclusions [and] formulaic recitations," and "fails to satisfy basic pleading standards." (Doc. 13 at 1, 5.)

The Court agrees. Brown has not provided anything beyond conclusory allegations concerning Shellpoint's role in, and responsibility for, the unfortunate tale of victimization described in the complaint. As noted, the complaint alleges that an unspecified person recommended that Brown speak to Wallace, who was described as "a point of contact to [Shellpoint] for help in obtaining a loan modification of some sort, or in the alternative, negotiate an extension of payments while she was attempting to . . . bring the loan current on her house." (Doc 1 at 3 ¶ 4.) The complaint further alleges that Brown paid $20,000 to Wallace over a period of months before realizing that Wallace was keeping her money for his own personal enrichment instead of remitting it to Shellpoint. At various places, the complaint characterizes Wallace as "a representative from Shellpoint" (*id.* at ¶ 5) and "an agent of the lender" (*id.* ¶ 8).

These are mere conclusory labels that need not be credited or accepted. *Iqbal*, 556

U.S. at 679-80. Notably absent from the complaint is any factual allegation that anybody from Shellpoint told Brown to speak with Wallace, that anyone at Shellpoint directed Brown to make payments to Wallace, or that Wallace was in any way associated with Shellpoint. Indeed, the text messages attached as an exhibit to the complaint suggest that Wallace was not employed *by* Shellpoint—instead, he claimed to be working on Brown's behalf to negotiate *against* Shellpoint for a loan modification or other form of relief. (Doc. 1-1 at 31-32 [Wallace informing Brown that "[t]here is zero chance of you getting a modification . . . from Shellpoint" because "[t]hey are dead set on foreclosure" but advising Brown that she should falsely tell Shellpoint that she intends to accept foreclosure, request a 60-day move-out period, and then "reinstate the loan" "an hour before the sale" and "then sue their asses"].) The complaint, in short, contains no facts suggesting Shellpoint provided any false information to Brown or made any misrepresentations to Brown. Although it is unfortunate Brown may have been defrauded by a shady character who was posing as a loan-modification specialist, this does not mean Brown can—in the absence of any facts suggesting Shellpoint was involved in the scheme—sue Shellpoint to recoup her losses.

II. Bank of America's Motion to Dismiss

Bank of America's motion to dismiss focuses entirely on the insufficiency of Brown's complaint. (Doc. 9.) As noted, the complaint fails to state a claim against Shellpoint. It contains even fewer factual allegations concerning Bank of America or Bank of America's role in Wallace's scheme. Accordingly, Brown has also failed to state a claim against Bank of America.

III. Brown's Motion to Amend

In her response to Shellpoint's motion to dismiss, Brown indicates that her motion to amend is meant to address the failings of the original complaint. (Doc. 22 at 1-2.) And in her motion to amend, Brown explains that she filed her original complaint "Pro Per with the assistance of a document preparation firm," that she subsequently discovered it contained "numerous errors," and that the amended complaint addresses these errors by (1)

omitting the request for injunctive relief and (2) clarifying that Brown "is only seeking damages . . . for matters that she discovered after the dismissal of the State Court Litigation," which include damages "caused by the Defendants' abrupt denial of her loan modification package immediately after the filing of this [lawsuit]." (Doc. 25 at 1-2.)

"Rule 15 advises the court that leave [to amend] shall be freely given when justice so requires. This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations and internal quotation marks omitted). Thus, "[n]ormally, when a viable case may be pled, a district court should freely grant leave to amend." *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1058 (9th Cir. 2011). "However, liberality in granting leave to amend is subject to several limitations." *Id.* (citation and internal quotation marks omitted). "Those limitations include undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay." *Id.*

The motion to amend will be denied. The proposed amended complaint largely adds background material about Brown's prior lawsuits and bankruptcies and, at times, mirrors the complaint in the state-court action. (Doc. 25-1 at 9-10.) Little of this information is relevant to this case and none of it remedies the pleading deficiencies identified in Parts I.B and II above. Indeed, the only potentially curative additions are a reference to a forwarded email purportedly sent by an employee of Shellpoint and a paragraph entitled "Discovery of Wrongful Acts." (Doc. 25-1 at 5 ¶ 14, 9 ¶ 32.) These additions, however, fail to create any plausible basis for holding Bank of America or Shellpoint responsible for the fraudulent scheme that was allegedly perpetrated by Wallace. The alleged email from Perez (Doc. 25-1 at 5 ¶ 14; Doc. 25-2 at 42-43) was merely forwarded to Brown by Wallace—the amended complaint contains no allegations of any direct contact between Perez (or any other employee of Shellpoint) and Brown. Moreover, the email doesn't suggest that Perez (or any other employee of Shellpoint) was even aware of the payments that Brown had sent to Wallace—to the contrary, the email seems to be a short acknowledgement by Shellpoint that Brown was agreeing to "surrender[]" and "consent to

| | |
|---|---|
| 1 | the foreclosure sale of [her] property." (Doc. 25-2 at 42.)  Finally, the email could not |
| 2 | plausibly serve as the basis for a belief by Brown that Wallace was an agent of Shellpoint |
| 3 | because it came too late in the process.  The email was forwarded to Brown in January |
| 4 | 2019, many months after she began sending payments to Wallace (and shortly before the |
| 5 | last payment was made). |
| 6 | For all of these reasons, the amended complaint is futile.  Leave to amend need not |
| 7 | be granted in these circumstances. |
| 8 | Accordingly, **IT IS ORDERED** that: |
| 9 | (1) Bank of America's motion to dismiss (Doc. 9) is **granted**; |
| 10 | (2) Shellpoint's motion to dismiss (Doc. 13) is **granted**; |
| 11 | (3) Brown's motion to amend (Doc. 25) is **denied**; |
| 12 | (4) Brown's claims against Shellpoint and Bank of America are **dismissed with** |
| 13 | **prejudice**; and |
| 14 | (5) The Clerk of Court shall terminate this action and enter judgment |
| 15 | accordingly. |
| 16 | Dated this 22nd day of October, 2019. |

_____
Dominic W. Lanza
United States District Judge